Filed 4/23/25  P. v. Macias CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ANTONIO MACIAS,<br><br>    Defendant and Appellant. | G062802<br><br>(Super. Ct. No. 19HF0749)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly K. Menninger, Judge. Affirmed in part, reversed in part, and remanded.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Antonio Macias appeals from his conviction of 18 counts of sexual crimes against five of his grandchildren. He contends: (1) insufficient evidence supported his convictions of forcible lewd acts in counts 2 and 3; (2) the jury instruction regarding Child Sexual Abuse Accommodation Syndrome (CSAAS) testimony was improper; (3) the trial court erred when it permitted the jury to consider charged offenses as propensity evidence for the other charged sexual offenses; (4) the trial court did not recognize its discretion to impose concurrent sentences on counts 2 and 3; and (5) his sentence constitutes cruel and unusual punishment.

We reject Macias's challenges to his conviction. With respect to his claim of sentencing error, however, the Attorney General concedes the trial court incorrectly concluded that consecutive sentences on counts 2 and 3 were mandatory. We therefore reverse and remand to the trial court to determine the appropriate sentence on counts 2 and 3 but otherwise affirm.

FACTS

We relate only those facts relevant to Macias's challenges to his conviction.

When Macias's granddaughter J.M. was nine years old, she spent one night sharing a bed with her brother, grandmother, and Macias. When she got up to use the bathroom, her grandmother and brother were gone. Macias grabbed J.M.'s wrists and pulled her back onto the bed. She explained that Macias "kind of threw [her] down." Macias touched J.M. several times after he pulled her down. First, he touched her thigh, which was charged as Count 2. Second, he touched her breast, which was charged as Count 3. Macias then put his other hand inside her shorts to touch her vagina. J.M. told Macias to stop, pushed his hands away, and ran to the bathroom. A sixth grandchild testified as to additional uncharged sexual crimes. The charges

2

included 15 counts of lewd or lascivious acts upon a child under the age of 14 (Pen. Code[1] § 288, subd. (a), counts 1, 5–13, 15–19); one count of attempting to commit a lewd or lascivious act with a child under the age of 14 (§§ 664/288, subd. (a); count 14); two counts of forcible lewd acts upon a child (§ 288, subd. (b)(1); counts 2 and 3); and one count of oral copulation or sexual penetration of a child 10 years or younger (§ 288.7, subd. (b); count 4).

At trial, the court admitted, over Macias's objection, expert testimony by Dr. Jody Ward, a clinical and forensic psychologist. She explained CSAAS evidence is used to describe and explain five characteristic behaviors commonly found in children who have been sexually abused: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction. CSAAS is a tool to understand why children who have allegedly been sexually abused behave as they do because their behaviors might otherwise seem counterintuitive or evidence of untruthfulness.

The trial court instructed the jury with a slightly modified CALCRIM No. 1193: "You have heard testimony from Dr. Jody Ward regarding child sexual abuse accommodation syndrome. [¶] Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. [¶] Dr. Jody Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes or allegations charged against him or any conduct or crimes

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

3

witness [A.M.] testified to with which he was not charged. [¶] You may consider this evidence only in deciding whether or not witnesses referred to in Counts 1–19's conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

The prosecution argued to the jury that it could consider the charged crimes as propensity evidence to support Macias's conviction of the other charged offenses in the same case. The trial court instructed the jury with CALCRIM No. 1191B: "The People presented evidence that the defendant committed the crimes of: [¶] Lewd Act Upon a Child Under 14 as charged in Counts 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19; [¶] Forcible Act on a Child Under 14 as charged in Counts 2 and 3; [¶] Penetration With a Child 10 Years or Younger as charged in Count 4; [¶] Attempted Lewd Act Upon a Child Under 14 as charged in Count 14; [¶] If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the charged crimes, lesser included offenses and allegations in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

A jury found Macias guilty of all counts except count 16. The jury also found true the multiple victim allegation (§ 667.61, subds. (e)(4) & (j)(2)) for each of the counts other than the attempt conviction in count 14.

The trial court sentenced Macias under the One Strike law to a term of 125 years to life plus 18 months, consisting of consecutive terms of 25

4

years to life on counts 2, 3, 10, 17, and 19 and a consecutive low term of 18 months on count 14. At sentencing, the trial court stated it was "aware that both count 2 and 3 are mandatory consecutive." Macias did not object to imposition of the consecutive terms on counts 2 and 3 at sentencing. The remaining counts were ordered to run concurrently.

## DISCUSSION

### I.

#### SUBSTANTIAL EVIDENCE SUPPORTED THE CONVICTIONS

Macias contends the evidence of force or duress was insufficient to support his convictions of forcible lewd acts on a child under age 14 in counts 2 and 3. We conclude substantial evidence showed the crimes were committed by use of force.[2]

Section 288 makes it a crime to "willfully and lewdly commit[ ] any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." (§ 288, subd. (a).) The punishment is increased if the crime is committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." (§ 288, subd. (b)(1).)

The "force" necessary to support a conviction need only be physical force that is "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'" (*People v. Soto* (2011) 51 Cal.4th 229, 242 (*Soto*).) "'[A]n act is forcible if force facilitated the act rather than being merely incidental to the act.'" (*People v. Morales* (2018) 29

---

[2] We need not address whether the evidence was also sufficient to show duress.

5

Cal.App.5th 471, 480 (*Morales*).) "[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that the lewd act was committed by means of force. (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.)

"When an appellant challenges the sufficiency of the evidence to support a conviction, the appellate court reviews the entire record to see "'whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'"''(*People v. Cochran* (2002) 103 Cal.App.4th 8, 12–13, disapproved on other grounds in *Soto, supra*, 51 Cal.4th at p. 248, fn. 12.) "We view the facts in the light most favorable to the judgment, drawing all reasonable inferences in its support." (*Cochran*, at p. 13.)

J.M.'s trial testimony was substantial evidence of force. J.M. testified that, when she attempted to get out of the bed in which she was sleeping with Macias, he yanked her back down onto the bed by her wrists. He then touched her breasts, thigh, and vagina. J.M. was eventually able to push Macias off and run to the bathroom. The act of pulling J.M. down by her wrists to restrain her and prevent her from getting off the bed was "substantially different from or substantially greater than that necessary to accomplish" the lewd touching itself. (*Soto, supra*, 51 Cal.4th at p. 242.) Pulling J.M. by her wrists onto the bed "'facilitated the act rather than being merely incidental to the act.'" (*Morales, supra*, 29 Cal.App.5th at p. 480.)

## II.

### THE CSAAS EVIDENCE WAS PROPERLY ADMITTED

Macias contends the trial court erred in giving CALCRIM No. 1193 because it improperly allowed the jury to use the expert's testimony

6

regarding CSAAS as evidence of his guilt. Macias further contends that the jury instruction violated his federal right to due process because it lessened the prosecution's burden of proof. We find no error.

CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301 (*McAlpin*).) Thus, CSAAS is relevant solely for the limited purpose of evaluating the credibility of an alleged child victim. (*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069.)

We review instructional error claims under a de novo standard of review. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.) "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) Courts generally presume that a jury "can and will dutifully follow the instructions they are given, including instructions that limit a jury's consideration of evidence for certain purposes or against certain parties." (*People v. Washington* (2017) 15 Cal.App.5th 19, 26 (*Washington*).)

First, Macias contends it was practically impossible for the jury to use the CSAAS testimony to evaluate the victims' credibility without also using it as proof that he committed the charged crimes. We disagree.

Courts reviewing this issue have concluded that CALCRIM No. 1193 "accurately informs the jury on the limited use of CSAAS evidence" and does not, as Macias argues, "improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony." (See, e.g., *People v. Lapenias*

7

(2021) 67 Cal.App.5th 162, 175.) Here, the instruction properly limited the jury's consideration of the CSAAS evidence, explicitly informing the jury that it could only use the CSAAS testimony to evaluate the victims' credibility, not as evidence of Macias's guilt. We presume the jury understood and followed the trial court's instructions. (*Washington*, *supra*, 15 Cal.App.5th at p. 26.) Accordingly, we find that the instruction was not internally inconsistent and did not permit an improper inference of Macias's guilt. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 504 (*Gonzales*).)

Next, Macias contends the jury instruction violated his federal right to due process. Generally, a court's compliance with the rules of evidence does not violate a defendant's due process rights. (*People v. Hall* (1986) 41 Cal.3d 826, 834–835.) In particular, "introduction of CSAAS evidence does not by itself deny [Macias] due process." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1747.)

Nor did the jury instruction lessen the prosecution's burden to demonstrate Macias's guilt beyond a reasonable doubt. CALCRIM No. 1193 instructs the jury that the CSAAS evidence cannot be considered as evidence of the defendant's guilt. Thus, the prosecution must still meet its burden of proof regardless of the admission of CSAAS testimony. (*Gonzales*, *supra*, 16 Cal.App.5th at pp. 503–504.)

III.

THE PROPENSITY EVIDENCE WAS PROPERLY ADMITTED

Macias contends that his federal due process rights were violated when the trial court instructed the jury with CALCRIM No. 1191B, which allows a jury to rely on currently charged sexual offenses to find that the defendant had the propensity to commit other charged sexual offenses in the

8

same case. Because our Supreme Court has previously rejected Macias's argument, we find no instructional error.

Evidence Code section 1101, subdivision (a) states: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

An exception to the prohibition on admission of character evidence is found in Evidence Code section 1108, subdivision (a), which provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Macias's due process argument is foreclosed by *People v. Villatoro* (2012) 54 Cal.4th 1152, 1168–1169, in which our Supreme Court held that Evidence Code section 1108 allows the use of both uncharged and charged sexual offenses in the same case in which the defendant is currently on trial as propensity evidence, and that CALCRIM No. 1191B does not violate a defendant's right to due process. As Macias concedes, we are bound by the decisions of the state's highest court.[3] (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[3] Macias raised this claim solely to preserve his right to present the issue in federal court.

## IV.

### THE COURT MUST EXERCISE ITS DISCRETION WHEN SENTENCING

### ON COUNTS 2 AND 3

Macias contends, and the Attorney General concedes, the trial court erred in concluding that consecutive sentences for the forcible lewd acts against victim J.M. in counts 2 and 3 were mandatory. We therefore vacate the sentences on counts 2 and 3 and remand to the trial court for further proceedings.

California's One Strike law "mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime (§ 667.61) and has also found certain factual allegations to be true (§ 667.61, subds. (d), (e))." (*People v. Anderson* (2009) 47 Cal.4th 92, 102.)

Consecutive sentences are mandatory "if the crimes . . . involve the same victim on separate occasions." (§ 667.6, subd. (d)(1).) When determining whether the crimes occurred on separate occasions, the court shall consider whether "the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed." (§ 667.6, subd. (d)(2).) But if "the crimes involve the same victim on the same occasion," the decision whether to impose consecutive sentences is discretionary. (§ 667.6, subd. (c).) The court may impose either consecutive or concurrent sentences. (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 265–267.)

""Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have

10

been based on misinformation regarding a material aspect of a defendant's record.""" (*People v. Salazar* (2023) 15 Cal.5th 416, 424.) The appropriate remedy in such cases "is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

The Attorney General argues that Macias waived this claim by failing to object below, citing *People v. Scott* (1994) 9 Cal.4th 331, 353. We find *Scott* distinguishable because Macias is not challenging the way in which the trial court exercised its sentencing discretion but rather its apparent misunderstanding of its sentencing authority. (See, e.g., *People v. Panozo* (2021) 59 Cal.App.5th 825, 840.) Accordingly, Macias has not waived this claim.

The Attorney General concedes Macias's claim has merit if not waived: "[T]he trial court did not make a finding as to whether the forcible lewd acts [Macias] perpetrated against [J.M.] occurred on separate occasions. Accordingly, the trial court's statement that it was required to impose consecutive sentences suggests that it was unaware of its sentencing discretion."

The Attorney General further notes remand is appropriate because "there is no clear indication in the record that the trial court would have imposed consecutive sentences on counts 2 and 3 even if it had been aware of its discretion." The Attorney General concludes "it is unclear how the trial court would have imposed the terms for counts 2 and 3 had it known it was free to impose concurrent or consecutive terms." (See, e.g., *Gutierrez, supra,* 58 Cal.4th at p. 1391 [remand required unless the record "clearly

11

indicate[s]" how the court would sentence]; *People v. Koback* (2019) 36 Cal.App.5th 912, 928.)

We agree the trial court should have the opportunity to make an express finding regarding whether counts 2 and 3 occurred on separate occasions and then exercise its sentencing discretion.

V.

THE SENTENCE IS NOT CRUEL AND UNUSUAL

Macias contends his sentence of five consecutive terms of 25 years to life plus 18 months is cruel and unusual under both the United States and California constitutions.

We conclude that this claim is waived for failure to object below. "A claim a sentence is cruel and unusual is forfeited on appeal if it is not raised in the trial court, because the issue often requires a fact–bound inquiry." (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.)

Even if the claim were properly raised, however, Macias has not met his "considerable burden" to demonstrate that the sentence violated either the federal or state constitutions. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) The Supreme Court has repeatedly held that life sentences, even for low-level theft and drug offenses, are not cruel and unusual under the federal Constitution. (See, e.g.*, Lockyer v. Andrade* (2003) 538 U.S. 63, 77 [consecutive sentences of 25 years to life for two petty theft with prior convictions did not violate the Eighth Amendment]; *Ewing v. California* (2003) 538 U.S. 11, 18-20 [sentence of 25 years to life for stealing three golf clubs].)

Compared to the life sentences for these less serious crimes, Macias's sentence of five consecutive terms of 25 years to life for 18 separate

counts of sexual abuse is not grossly disproportionate to the gravity of the offenses.

Article I, section 17 of the California Constitution also proscribes cruel or unusual punishment. A prison sentence violates article I, section 17, if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, superseded by statute on other grounds as stated in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51.) To determine whether a sentence is disproportionate under our state Constitution, California courts generally weigh the following factors: a) the nature of the offense and the offender, including the danger posed by both; b) the punishment imposed compared to punishments for other offenses; and c) the punishment imposed compared to other jurisdictions' punishments for the same offense. (*Id.* at pp. 425–429.)

The first *Lynch* factor weighs against Macias. Macias's crimes are "repugnant" and some of the "most serious"; he committed multiple sex crimes against six of his grandchildren, some as young as age nine. (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244.) The trial court found that the victims were particularly vulnerable, and Macias took advantage of a position of trust as their grandfather. Given these serious circumstances, Macias's lack of a prior criminal record "is not determinative." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 807.)

The second *Lynch* factor also weighs against Macias. A sentence of 25 years to life is proportionate when compared with other crimes that mandate similar sentences, e.g., 25 years to life for failure to register as a sex offender. (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1071–1072.) Furthermore, the "penalties for single offenses . . . cannot properly be

compared to those for multiple offenses . . . ." (*People v. Crooks* (1997) 55 Cal.App.4th 797, 807.)

Regarding the third *Lynch* factor, Macias made "no effort to compare his sentence with . . . punishments in other states for the same offense," which we take "as a concession that his sentence withstands [that] constitutional challenge . . . ." (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

## DISPOSITION

We reverse and remand the case to the trial court to consider whether to impose concurrent or consecutive sentences on counts 2 and 3.

The judgment is otherwise affirmed.

SCOTT, J.

WE CONCUR:

O'LEARY, P. J.

MOTOIKE, J.

14